UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                         )
OSCAR E. MONCADA,                        )
                                         )
           Plaintiff,                    )
                                         )
      v.                                 )      Civil Action No. 05-0470 (PLF)
                                         )
MARY E. PETERS, Secretary,               )
United States Department of Transportation,[1]  )
                                         )
           Defendant.                    )
_____  )


OPINION

        This matter is before the Court on (1) defendant's renewed motion for summary

judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, and (2) plaintiff's motion

to strike certain exhibits attached to defendant's renewed motion.[2]  The Court will deny

plaintiff's motion to strike and grant defendant's renewed motion for summary judgment.

_____

        [1]      The complaint named Norman Y. Mineta, former Secretary of the United States
Department of Transportation, as the party defendant.  The Court now substitutes Mary E. Peters,
Mr. Mineta's successor, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

        [2]      The papers submitted in connection with this matter include: Defendant's
Renewed Motion for Summary Judgment ("Mot. S.J."); Plaintiff's Response and Memorandum
of Points and Authorities in Opposition to Defendant's Renewed Motion for Summary Judgment
("Opp. S.J."); Plaintiff's Motion to Strike ("Mot. Strike"); and Defendant's Reply to Plaintiff's
Opposition to Defendant's Motion for Summary Judgment and Defendant's Opposition to
Plaintiff's Motion to Strike ("Reply S.J.").  This is the defendant's second attempt to obtain
summary judgment.  The Court denied its first motion because it was not properly supported and
because the parties had not yet engaged in discovery.  See Moncada v. Peters, Civil Action No.
05-0470, Memorandum Opinion and Order at 4-5 (D.D.C. March 15, 2006).

I.  BACKGROUND

This is an employment discrimination case brought under Title VII of the Civil

Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq*., and the Age Discrimination in

Employment Act of 1967, 29 U.S.C. §§ 621 *et seq*. ("ADEA").  Plaintiff Oscar E. Moncada

alleges that the Federal Aviation Administration, an agency within the United States Department

of Transportation, unlawfully discriminated against him based on his national origin (Hispanic),

sex (male) and age (48 at the time the amended complaint was filed) by failing to hire him for ten

positions for which he applied between 1995 and 2002.  See Complaint ¶ 4 ("Compl.").[3]

The FAA denies the allegations and has moved for summary judgment.  The gist

of the FAA's argument is that it had legitimate, non-discriminatory reasons for not selecting Mr.

---

[3]        Mr. Moncada applied for two Aviation Safety Inspector positions in the mid-
1990s.  See Mot. S.J., Ex. 3, Letter from Tami L. Wright at 2 (Jan. 29, 2003).  Mr. Moncada also
applied for the following eight positions between 2000 and 2002 (identified by position title and
the last five digits of the corresponding vacancy announcement): Management and Program
Analyst (63365); International Aviation Operations Specialist (63281); Aviation Safety Inspector
(61908); Program Management Specialist (64739); Aviation Safety Inspector (64940); Aviation
Safety Inspector (65074); Computer Specialist (59518); and Aviation Safety Inspector (59858).
For the sake of clarity, the Court will refer to the post-2000 positions solely by the last five digits
of the corresponding vacancy announcement.

        The Court need not address Mr. Moncada's claims with respect to the two pre-
2000 positions because they are clearly untimely.  There is no genuine dispute that Mr. Moncada
first contacted an EEO counselor on or about August 6, 2002, see Mot. S.J., Ex. 11,
Memorandum from EEO Counselor Russell O. Green (August 19, 2002), nor is there any
genuine dispute that Mr. Moncada should have had a reasonable suspicion that he may have been
discriminated against with respect to the pre-2000 positions long before August of 2002.  See
Coghlan v. Peters, 555 F. Supp. 2d 187, 200-01 (D.D.C. 2008).  The Court therefore grants
summary judgment in favor of the FAA with respect to all of Mr. Moncada's claims based on his
non-selection for the two pre-2000 positions.

Moncada, and that Mr. Moncada has failed to identify any substantial evidence to the contrary. See, e.g., Mot. S.J. at 14-20.  In response, Mr. Moncada has filed (1) a motion to strike most of the exhibits attached to the FAA's renewed motion for summary judgment, and (2) a formal opposition to the FAA's renewed motion for summary judgment.  In his motion to strike, Mr. Moncada argues that the Court should strike the FAA's exhibits 2, 4, 5, 6, 7, 8, 9, 10, 11 and 12 because they have not been satisfactorily identified, explained or authenticated and because they include inadmissible hearsay evidence.  See generally Mot. Strike.  In his opposition brief, Mr. Moncada incorporates the argument from his motion to strike and contends that the FAA cannot obtain summary judgment because its renewed motion relies solely on inadmissible exhibits.  See Opp. S.J. at 2.  In the alternative, Mr. Moncada asserts that summary judgment for the FAA is inappropriate because there is sufficient evidence for a reasonable jury to conclude that the FAA failed to hire him for discriminatory reasons.  See id. at 3-15.

## II.  SUMMARY JUDGMENT

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits [or declarations] show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006).  "A fact is 'material' if a dispute over it might affect the outcome of a suit under the governing law; factual disputes that are 'irrelevant or unnecessary' do not affect the summary judgment determination."  Holcomb v. Powell, 433 F.3d

at 895 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. at 248).  An issue is "genuine" if the

evidence is such that a reasonable jury could return a verdict for the nonmoving party.  See

Anderson v. Liberty Lobby, Inc., 477 U.S. at 248; Holcomb v. Powell, 433 F.3d at 895.  When a

motion for summary judgment is under consideration, "the evidence of the non-movant is to be

believed, and all justifiable inferences are to be drawn in his favor."  Anderson v. Liberty Lobby,

Inc., 477 U.S. at 255; see also Mastro v. Potomac Electric Power Co., 447 F.3d 843, 849-50

(D.C. Cir. 2006); Aka v. Washington Hospital Center, 156 F.3d 1284, 1288 (D.C. Cir. 1998) (*en

banc*); Washington Post Co. v. Dep't of Health and Human Services, 865 F.2d 320, 325 (D.C.

Cir. 1989).  On a motion for summary judgment, the Court must "eschew making credibility

determinations or weighing the evidence."  Czekalski v. Peters, 475 F.3d 360, 363 (D.C.

Cir. 2007).

        The nonmoving party's opposition, however, must consist of more than mere

unsupported allegations or denials and must be supported by affidavits, declarations or other

competent evidence, setting forth specific facts showing that there is a genuine issue for trial.

FED. R. CIV. P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  He is required to

provide evidence that would permit a reasonable jury to find in his favor.  Laningham v. United

States Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987).  If the nonmovant's evidence is "merely

colorable" or "not significantly probative," summary judgment may be granted.  Anderson v.

Liberty Lobby, Inc., 477 U.S. at 249-50; see Scott v. Harris, 127 S. Ct. 1769, 1776 (2007)

("[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-

moving party, there is 'no genuine issue for trial.'") (quoting Matsushita Electric Industrial Co. v.

Zenith Radio Corp., 475 U.S. 574, 587 (1986)).  To defeat a motion for summary judgment, a

plaintiff must have more than "a scintilla of evidence to support his claims."  Freedman v. MCI

Telecommunications Corp., 255 F.3d 840, 845 (D.C. Cir. 2001).

## III.  THE AGENCY HAS CARRIED ITS INITIAL BURDEN

Mr. Moncada argues that the FAA's renewed motion for summary judgment must

be denied because the agency "has totally failed to establish, by [its] filing, the absence of a

genuine issue."  Opp. S.J. at 1.  The agency has failed in this regard, says Mr. Moncada, because

– for reasons set forth in his motion to strike – nearly all of the exhibits on which the agency's

renewed motion relies are inadmissible.  Id.[4]  The Court rejects this argument for two reasons.

---

[4]       Specifically, Mr. Moncada contends that the FAA's exhibits 2, 4, 5, 6, 7, 8, 9, 10, 11 and 12 are inadmissible.  Exhibits 2 and 11 are memoranda from EEO counselors, dated October 24, 2002 and August 19, 2002, respectively.  Both state that Mr. Moncada first sought EEO counseling in August 2002 and explain the nature of his claims.  Exhibit 4 is a memorandum from FAA employee Alfreda Terrell, dated March 26, 2003, stating that "Mr. Moncada's experience as minimally described in his application did not give enough evidence of experience that he could  . . . successfully perform" the duties of position 63365.  Exhibit 5 is a memorandum from FAA employee Hattie Higgins-Greene, dated July 15, 2003, stating that Mr. Moncada did not submit certain application materials for position 63281 and was not referred to the selecting official for that position.  Exhibit 6 is a document entitled "Qualification Record" which appears to show that the FAA found Mr. Moncada unqualified for position 61908.  Exhibit 7 is a document entitled "Closeout Checklist," dated October 10, 2002, indicating that the FAA made no selection for position 64739.  Exhibit 8 is a document entitled "Headquarters Merit Selection Certificate," indicating that Mr. Moncada ranked 13 out of 15 applicants for position 64940.  Exhibit 9 is another "Closeout Checklist" document, dated October 10, 2002, indicating that the FAA made no selection for position 65074.  Exhibit 10 is a document entitled "Qualifications Worksheet," indicating that Mr. Moncada was found not qualified for position 59518.  Exhibit 12 is a document entitled "Promotion Plan Record," which, according to the FAA, see Reply S.J., Ex. 21, Affidavit of Paulette Randolph ¶ 3 (April 17, 2008), indicates that the FAA has no record of Mr. Moncada applying for position 59858.

First, Mr. Moncada appears to believe that the FAA may carry its initial burden of production only by coming forward with admissible evidence affirmatively demonstrating the absence of any genuine disputes.  See, e.g., Mot. Strike at 2 ("Defendant by not submitting admissible evidence as part of his motion or to support his Points and Authorities has failed to carry his initial burden of production.").  He is incorrect.

Rule 56 contains "no express or implied requirement" that the movant "support its motion with affidavits or other similar materials *negating* the opponent's claim."  Celotex Corp. v. Catrett, 477 U.S. at 323; see FED. R. CIV. P. 56(a), (b).  As a result, when the nonmoving party (here, Mr. Moncada) bears the ultimate burden of proof at trial on a dispositive issue or issues, the moving party (here, the FAA) may carry its initial burden on summary judgment by doing no more than "pointing out to the district court . . . that there is an absence of evidence to support the nonmoving party's case."  Celotex Corp. v. Catrett, 477 U.S. at 325; see 10A WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE: CIVIL 3D, § 2727 at 474 (1998); 11 MOORE'S FEDERAL PRACTICE § 56.13[1] at 56-138 (3d ed. 2002).  In such cases, a movant's motion for summary judgment is "properly made and supported," FED. R. CIV. P. 56(e)(2), when the movant

> inform[s] the district court of the basis for its motion, and
> identif[ies] those portions of "the pleadings, depositions, answers
> to interrogatories, and admissions on file, together with the
> affidavits, if any," which it believes demonstrate the absence of a
> genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. at 323 (quoting FED. R. CIV. P. 56(c)).

The FAA has done precisely what Rule 56 requires: It has pointed out to this

Court that there is an absence of evidence in the record to support plaintiff's case and thus that

there is no genuine issue of material fact.  See, e.g., Mot. S.J. at 14-16 (citing Mr. Moncada's

deposition to argue that his "claims are essentially based on a 'belief' that he was discriminated

[against], and nothing more").  Thus, the agency has carried its initial burden of production.  See

Celotex Corp. v. Catrett, 477 U.S. at 329 (Brennan, J., dissenting) (agreeing with the majority

that the movant need not "provide affirmative evidence disproving the plaintiff's case" to carry

its initial burden of production).  Once the movant carries its initial burden in this manner, the

burden then shifts to the nonmovant to demonstrate that there *are* genuine issues of material fact

in dispute requiring a trial.  As discussed below, this plaintiff has not done that.

Second, the attacks on the FAA's exhibits set forth in Mr. Moncada's motion to

strike are not persuasive.  Mr. Moncada makes two primary arguments in his motion to strike.

First, he argues that exhibits 2, 4, 5, 6, 7, 8, 9, 10, 11 and 12 lack sufficient evidence of

authenticity (under Rule 901 of the Federal Rules of Evidence) and are not self-authenticating

(under Rule 902 of the Federal Rules of Evidence); thus, barring further proof of authenticity and

perhaps further identification and explanation, they must be considered irrelevant for summary

judgment purposes.  See Mot. Strike at 4-6.[5]  Second, he argues that these exhibits contain

hearsay and therefore are not admissible.  See id. at 8.

---

[5]      "[A]uthentication and identification represent a special aspect of relevance.  This is so because evidence cannot have any probative value unless it actually is what it is purported to be."  5 JACK B. WEINSTEIN & MARGARET A. BERGER, WEINSTEIN'S FEDERAL EVIDENCE § 901.02[2] at 901-11 (2008).

Exhibits 2, 4, 5, 6, 7, 8, 9, 10, 11 and 12 should not be stricken pursuant to Rules

901 and 902 of the Federal Rules of Evidence.  Rule 901 provides that "[t]he requirement of

authentication or identification as a condition precedent to admissibility is satisfied by evidence

sufficient to support a finding that the matter in question is what its proponent claims." FED. R.

EVID. 901.  The proponent need only offer proof sufficient for a reasonable fact-finder to

conclude that the evidence in question is what the proponent says it is.  See United States v.

Safavian, 435 F. Supp. 2d 36, 39-40 (D.D.C. 2006).  Federal Rule of Evidence 901(b)(7)

"permits authentication of documents that purport to be public records, reports, statements, or

data compilations by evidence that they come from the public office where items of that nature

are kept."  5 JACK B. WEINSTEIN & MARGARET A. BERGER, WEINSTEIN'S FEDERAL EVIDENCE

§ 901.10[2] at 901-89 (2008).  Here, the FAA has authenticated all of the exhibits at issue by way

of certifications from the relevant custodians.  See Reply S.J., Ex. 18, Certification of Tami L.

Wright (Dec. 12, 2005) (attesting to authenticity of exhibits 2, 3, 4, 5, 7, 8 and 11); id., Ex. 20,

Certification of Hattie Higgins-Greene (attesting to authenticity of exhibits 6, 9, 10 and 12).  In

addition, the FAA has provided affidavits from knowledgeable employees that identify and

explain all of the exhibits that are not self-explanatory.  See id., Ex. 19, Affidavit of Esra Özben

(March 14, 2008) (exhibits 7, 8 and 9); id., Ex. 21, Affidavit of Paulette Randolph (April 17,

2008) (exhibits 10 and 12); id., Ex. 22, Affidavit of Greg J. Morgan (April 21, 2008) (exhibit 6).[6]

---

[6]      Thus, Mr. Moncada is wrong to argue that the FAA's renewed motion suffers
from the same defects as the original.  See Mot. Strike at 9.  The main problem with the agency's
original motion was the lack of any evidence – by way of deposition, affidavit, or declaration –
identifying and explaining the agency's supporting exhibits.  See Moncada v. Peters, Civil Action

These documents support a finding that the exhibits at issue are what the FAA says they are and mean what the FAA says they mean, and Mr. Moncada has cited no reason to find otherwise.

Nor should the exhibits be stricken because they include hearsay.  Rule 803(8) excepts from the hearsay prohibition "[r]ecords, reports, statements, or data compilations, *in any form*, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report . . . unless the sources of information or other circumstances indicate lack of trustworthiness."  FED. R. EVID. 803(8) (emphasis added).[7]  All of the exhibits at issue fall within one or both of these categories, and nothing about the exhibits themselves or the circumstances of this case indicate a "lack of trustworthiness."  The Court therefore will not strike the exhibits on hearsay grounds.

In short, the Court rejects (1) all of the arguments set forth in Mr. Moncada's motion to strike, and (2) the argument in Mr. Moncada's opposition to defendant's summary judgment motion that depends on the arguments set forth in his motion to strike – that is, the argument that the agency has failed to submit admissible evidence in support of its renewed

---

No. 05-0470, Memorandum Opinion and Order at 4-5 (D.D.C. March 15, 2006).  The renewed motion cures that deficiency by including the certifications and affidavits described above.

[7]      Of course, the Court agrees that the admissibility of these exhibits is limited by the scope of the hearsay exception in Rule 803(8).  For example, "[r]eports otherwise admissible under Rule 803(8) may not contain double hearsay" unless the second level of hearsay falls within the scope of another hearsay exception.  Budden v. United States, 748 F. Supp. 1374, 1378 (D. Neb. 1990).  Mr. Moncada has made no effort to identify double hearsay or similarly problematic aspects of any of the exhibits at issue, and the Court observes that it need not and has not relied on any aspects of the exhibits that *could* constitute double hearsay.

motion and therefore has failed to carry its initial burden of production.  Thus, the Court will

deny Mr. Moncada's motion to strike, and turn to his remaining arguments for denying the

FAA's renewed motion for summary judgment.

## IV.  THE AGENCY IS ENTITLED TO SUMMARY JUDGMENT

### *A. Framework*

Mr. Moncada asserts that the FAA violated Title VII by failing to hire him

because of his national origin and his sex.  See Compl. ¶¶ 11, 17.[8]  He also asserts that the FAA

violated the ADEA by failing to hire him because of his age.  See Compl. ¶ 14.[9]  Because he

offers no direct evidence of discrimination, his disparate treatment claims under both statutes

must be analyzed under the burden-shifting framework of McDonnell Douglas Corp. v. Green,

411 U.S. 792 (1973).  See Barnette v. Chertoff, 453 F.3d 513, 515 (D.C. Cir. 2006).  Under that

framework, a plaintiff must first establish a prima facie case of discrimination.  See Teneyck v.

Omni Shoreham Hotel, 365 F.3d 1139, 1149 (D.C. Cir. 2004).  Doing so creates a rebuttable

presumption of discrimination and "triggers the employer's burden to produce admissible

evidence that, if believed, would establish that the employer's action was motivated by a

legitimate, nondiscriminatory reason."  Id. at 1151.  If the employer meets this burden, then all

---

[8]      Title VII provides, in pertinent part, that "[a]ll personnel actions affecting employees or applicants for employment . . . in executive agencies . . . shall be made free from any discrimination based on race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-16.

[9]      The ADEA provides, in pertinent part, that "[a]ll personnel actions affecting employees or applicants for employment who are at least 40 years of age . . . in executive agencies . . . shall be made free from any discrimination based on age."  29 U.S.C. § 633a(a).

presumptions drop away and the Court must address the "ultimate question": "whether

intentional discrimination may be inferred from all the evidence before the trier of fact,"

including any evidence that the employer's asserted reasons are pretextual.  Id.

As the D.C. Circuit has explained, however, "the district court need not – *and*

*should not* – decide whether the plaintiff actually made out a prima facie case under McDonnell

Douglas" at the summary judgment stage if (1) the plaintiff has suffered an adverse employment

action, and (2) the defendant has asserted a non-discriminatory reason for its behavior.  Brady v.

Office of the Sergeant at Arms, 520 F.3d 490, 494 (D.C. Cir. 2008).

> Rather, . . . in those circumstances, the district court must resolve
> one central question:  Has the employee produced sufficient
> evidence for a reasonable jury to find that the employer's asserted
> non-discriminatory reason was not the actual reason and that the
> employer intentionally discriminated against the employee on the
> basis of [any statutorily prohibited factors]?

Id.

This is a Brady case.  Mr. Moncada has suffered several adverse employment

actions – specifically, he has not been selected for ten positions.  In addition, the FAA has

asserted specific non-discriminatory reasons for not selecting Mr. Moncada.  For example, the

FAA has asserted that it did not hire Mr. Moncada for positions 63365 and 63281 largely because

Mr. Moncada failed to submit certain additional application materials and, in the absence of

those materials, the agency reasonably concluded that he was not qualified for those positions.

11

See Defendant's Statement of Material Facts Not In Dispute ¶ 6.[10]  The FAA similarly has

asserted non-discriminatory reasons for not selecting Mr. Moncada for all of the other positions

at issue.  See id. ¶ 4 (stating that Mr. Moncada was not hired for position 59581 because the

highest ranked candidate was hired for that position); id. ¶¶ 7, 10 (stating that Mr. Moncada was

not hired for positions 61908 and 65074, respectively, because he was not qualified); id. ¶ 8

(stating that Mr. Moncada was not hired for position 54739 because that position was canceled);

id. ¶ 9 (stating that Mr. Moncada was not hired for position 64940 because he was less qualified

than others); id. ¶ 11 (stating that Mr. Moncada was not hired for position 59858 because the

FAA "has no record of Plaintiff applying for the position").[11]

As Mr. Moncada suffered adverse employment actions and the agency has

articulated non-discriminatory reasons for its behavior, the Court will "turn directly to the central

---

[10]     All acknowledge that these additional materials – called "knowledge, skills and abilities" statements, or "KSA statements" – are *optional* parts of the application package.  They are often important, however, because they allow applicants to further expound upon their qualifications and therefore permit the agency to more accurately evaluate them.  See Mot. S.J., Ex. 14, Vacancy Announcement for Position 63281 at 2 (April 12, 2002) (describing the purpose of the optional KSA statements).

[11]     One of these assertions is problematic.  The FAA states that "[o]n December 9, 2001, the selecting official approved the expert panel's recommendation to hire the highest ranked candidate" for position 59518, and cites exhibit 10 – which the FAA refers to as a "Headquarters Merit Selection Certificate" – in support.  Defendant's Statement of Material Facts Not In Dispute ¶ 4.  But exhibit 10 is *not* a Headquarters Merit Selection Certificate, nor does it say what the FAA says it says.  Nevertheless, exhibit 10 – entitled "Qualifications Worksheet" – *does* indicate that "the personnel specialist determined that [Mr. Moncada] was not qualified for [position 59518] because he did not meet the Specialized Experience requirements of the position."  Reply S.J., Ex. 21, Affidavit of Paulette Randolph ¶ 2 (April 17, 2008).  Thus, the FAA has asserted a legitimate reason for not selecting Mr. Moncada for position 59518.

issue: whether [Mr. Moncada] produced evidence sufficient for a reasonable jury to find that the

employer's stated reason was not the actual reason and that the employer intentionally

discriminated against" Mr. Moncada.  Brady v. Office of the Sergeant at Arms, 520 F.3d at 495.

### B.  Analysis

Mr. Moncada argues that a reasonable jury could infer discrimination from (1) his

interactions with FAA personnel, (2) alleged structural flaws in the FAA's hiring procedures, and

(3) the hiring of Anaida Haas (a 23-year-old woman of Russian descent) rather than Mr.

Moncada for position 63281.  The Court disagrees.

### 1.  Interactions With FAA Personnel

Mr. Moncada argues that a reasonable jury could infer national origin

discrimination because (1) FAA employees were aware of his national origin, (2) he was

qualified for the positions at issue, and (3) he was not hired.  See Mot. S.J., Ex. 13, Deposition of

Oscar Moncada at 33-38 (May 30, 2007) ("Moncada Dep.").[12]  Mr. Moncada argues that a

reasonable jury could infer sex discrimination because (1) he spoke only to female FAA

employees when he telephoned the agency, (2) he was qualified for the positions at issue, and

(3) he was not hired.  See id. at 40-45.  Finally, Mr. Moncada argues that a reasonable jury could

---

[12]     To be clear, Mr. Moncada believes that FAA employees were aware of his
national origin for two reasons: (1) his last name, which appears on his applications, suggests a
Latin American heritage, and (2) his "noticeable Latin accent," Opp. S.J., Declaration of Oscar
Moncada ¶ 7 (Jan. 20, 2008), was detectable to those FAA employees to whom he spoke on the
telephone when he called to check on the status of his applications.

infer age discrimination because (1) he has met FAA employees between the ages of 25-30 who

do work similar to the work he would like to do, (2) "it's part of the culture to . . . discriminate

[against] people [over] 40," (3) he was qualified for the positions at issue, and (4) he was not

hired.  Id. at 50; see also id. at 51-52.  All of these arguments fail.

> At this stage the Court is to determine whether a reasonable jury could conclude

that Mr. Moncada suffered discrimination by crediting his evidence and drawing all *justifiable*

inferences in his favor.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 255.  But even

assuming that Mr. Moncada has accurately described his interactions with FAA personnel, the

facts above are insufficient to justify an inference of discrimination.  No reasonable jury could

conclude that the FAA discriminated against Mr. Moncada simply because the agency was aware

of his national origin; there is obviously a large difference between being aware of an applicant's

national origin and choosing not to hire an applicant because of his national origin.  Nor could a

reasonable jury conclude that the FAA discriminated against Mr. Moncada on the basis of his

sex.  It may be true that Mr. Moncada "never got [an] opportunity to talk to a male" FAA

employee when he called the agency; it also may be true that "a large portion of the employees in

FAA [are] females."  Moncada Dep. at 40.  But of course, neither fact suggests that the FAA

intentionally discriminated against Mr. Moncada.

> Finally, no reasonable jury could conclude that the FAA discriminated against Mr.

Moncada on the basis of his age.  Certainly no reasonable jury could conclude that the agency

discriminated against Mr. Moncada simply because, he alleges, there is a general societal bias

against older workers.  (If a jury could so conclude, plaintiffs would never have to offer any

evidence that they themselves suffered discrimination to survive summary judgment.)  And even

if it is true that Mr. Moncada has met younger FAA employees, that fact has no probative value

with respect to the central issue in this case: whether the FAA discriminated against Mr.

Moncada.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 249-50 (summary judgment may be

granted if the nonmovant's evidence is "not significantly probative").  Mr. Moncada does not

claim that any of these younger employees applied for the positions for which he applied, see

Moncada Dep. at 51-52, and nothing in the record suggests that they did.

### 2.  Structural Flaws

Mr. Moncada also argues that a reasonable jury could conclude that he suffered

discrimination on the basis of his national origin, sex and age because (1) the FAA requests

information about applicants' race (and perhaps nationality and age) as part of the application

process, see Opp. S.J. at 3-7, 15, and (2) the "FAA's use of subjective criteria in the selection

process provides a ready mechanism for discrimination." Id. at 7.  The Court disagrees.  Mr.

Moncada offers no evidence that either of these features of the FAA's hiring process – both of

which have obvious legitimate uses – were used as pretexts for discrimination.[13]  In other words,

his allegations based on these purported structural flaws are entirely unfounded, unsubstantiated

and speculative.  Such allegations "create[] no 'genuine issue of fact' and will not withstand

summary judgment." Harding v. Gray, 9 F.3d 150, 154 (D.C. Cir. 1993); see also McKenzie v.

---

[13]      According to the FAA, the agency collects demographic information on applicants
because it is required by law to do so. See Reply S.J. at 5.  And of course, the use of subjective
criteria in employment decisions is neither rare nor necessarily insidious.

Principi, 54 Fed. App'x 1, 3 (D.C. Cir. 2002) ("A plaintiff that offers only 'mere speculation[]' to

refute the employer's proffered legitimate, non-discriminatory reason, however, fails to create a

genuine issue of material fact to avoid summary judgment.") (quoting Brown v. Brody, 199 F.3d

446, 459 (D.C. Cir. 1999)).

### 3.  Hiring of Anaida Haas

Mr. Moncada's final argument is that a reasonable jury could conclude that he

suffered discrimination on the basis of his national origin, sex and age because the FAA hired

Anaida Haas (a 23-year-old woman of Russian descent) rather than Mr. Moncada for position

63281. See Opp. S.J. at 12 (arguing that the hiring of Ms. Haas "demonstrates the subjective and

discriminatory nature of the screening process used by the FAA" because Mr. Moncada "was

much more qualified for the position" than Ms. Haas).  The Court disagrees.

Courts have "consistently declined to serve as . . . 'super-personnel department[s]

that reexamine[] an entity's business decisions'" when considering plaintiffs' challenges to

employers' non-discriminatory explanations for non-selection.  Holcomb v. Powell, 433 F.3d at

897 (citing Barbour v. Browner, 181 F.3d 1342, 1346 (D.C. Cir. 1999)).  Thus, "[a] plaintiff

asserting that an employer's explanation is pretextual based upon comparative qualifications

faces a formidable task."  Nyunt v. Tomlinson, 543 F. Supp. 2d 25, 39 (D.D.C. 2008).  "[I]n

order to justify an inference of discrimination, the qualifications gap must be great enough to be

inherently indicative of discrimination."  Jackson v. Gonzales, 496 F.3d 703, 707 (D.C. Cir.

2007).  The Court perceives no differences between the two candidates so stark and strange as to

16

be "inherently indicative of discrimination." Id. After all, in reality, the two candidates were

competing for different positions. Ms. Haas applied for position 63281 at the GS-7, GS-9 and

GS-11 levels; she was hired at the GS-7 level. See Gant Dep. at 75. Mr. Moncada, on the other

hand, applied for position 63281 at the GS-11 level only. Id. at 46, 72.[14] As the FAA points out,

"[a]n individual may qualify for a position at the lower grade, but may not necessarily qualify for

the same position at a higher grade level." Reply S.J. at 6; see also Gant Dep. at 45, 50-54, 58-

61, 105. Mr. Moncada does not argue that Ms. Haas was unqualified for the position at the GS-7

level, and Mr. Moncada did not apply for the position at the GS-7 level. Thus, even assuming

that Ms. Haas lacks some of Mr. Moncada's skills and experience – and therefore would not

qualify at the GS-11 level – the agency's decision to hire Ms. Haas for the GS-7 position (rather

than Mr. Moncada for the higher level position) is hardly "inexplicable" and therefore suggestive

of discrimination. Lathram v. Snow, 336 F.3d 1085, 1091 (D.C. Cir. 2003).

### 4. Missing Application

That leaves one loose end to address. The FAA argues that it did not select Mr.

Moncada for position 59858 because Mr. Moncada did not apply for the position. See

Defendant's Statement of Material Facts Not In Dispute ¶ 11. Mr. Moncada insists that he did

apply for the position, see Moncada Decl. ¶ 4, and that this factual dispute precludes summary

---

[14] When a position is advertised at more than one level, applicants may apply at one or more of those levels, and the FAA may choose to hire someone who applies at a lower level rather than someone who applies at a higher level. Not surprisingly, applicants who apply at higher levels are required to have higher-level skills and experience. See Gant Dep. at 71-73.

judgment.  See Opp. S.J. at 13-14.  His theory seems to be that a reasonable jury could conclude

that the agency is lying about not having received the application in order to "cover up"

discriminatory intentions.  See id. at 13.  But why?  There is no indication that the agency is

lying, and the mere fact that Mr. Moncada submitted an application and the agency now has no

record of it hardly suggests discrimination.  Cf. Montgomery v. Chao, 495 F. Supp. 2d 2, 16

(D.D.C. 2007) ("There is nothing on the record from which a reasonable jury could conclude that

the [agency] intentionally lost or misplaced [Mr. Moncada's] application . . . through anything

other than inadvertence.") (internal quotation marks and citation omitted).  Thus, while there may

be a dispute as to whether Mr. Moncada applied for position 59858, it is not material.

## V.  CONCLUSION

Mr. Moncada offers no persuasive reasons to strike the FAA's exhibits, and his

evidence of discrimination is – at best – "merely colorable."  Anderson v. Liberty Lobby, Inc.,

477 U.S. at 249.  The Court therefore has no choice but to deny Mr. Moncada's motion to strike

and grant the FAA's renewed motion for summary judgment.  An Order consistent with this

Opinion will issue this same day.

SO ORDERED.

/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE: September 29, 2008

18